UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANDOLPH D GALE, *et al*, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-05-4092 |
| | § | |
| ALAN G CARNRITE, *et al*, | § | |
| | § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.  Introduction**

Pending before the Court is the defendants Alan G. Carnrite and Carnrite Real Estate Holdings, LLC's ("Carnrite") motion for summary judgment.  The plaintiffs Randolph D. Gale and Debra E. Gale (the "Gales") have responded to the motion and Carnrite has replied.  Having considered the motion, the filings, and the applicable authorities, the Court determines that the motion should be denied.

**II.  Factual Background**

Sometime in 1999 the Gales decided to purchase a condominium located in San Jose del Cabo, Baja California Sur, Mexico from Carnrite.  When the Gales made an offer for the condominium they were informed that because of the legal restrictions on non-Mexican ownership of Mexican property, they would not be purchasing the condominium directly but would be purchasing a limited liability company, Villa Rayos del Sol, LLC ("Villa Rayos").  Villa Rayos was the beneficial owner of a leasehold interest in the condominium under a

Mexican trust arrangement known as a *fideicomiso* .  Apparently, Villa Rayos' only purpose was to serve as the beneficial interest owner of the leasehold.  While considering the proposal, the Gales employed an attorney in connection with the purchase.  The Gales gave no instructions to the attorney other than to make sure that the "transaction could go forward without any problems and to identify any potential problems with the transaction."  The only problems identified were those relating to the physical condition of the condominium, which were all resolved to the Gales' satisfaction.

On December 17, 1999, the Gales and Carnrite entered into an agreement entitled "Joint Escrow Instructions of Seller and Buyer, and Agreement for Sale of Membership Interest in Villa Rayos del Sol, LLC."  The agreement provided that the Gales were to purchase all of the membership interest in Villa Rayos for a price of $2,125,000.  The agreement includes a warranty made by Carnrite as seller, which reads:

Article 3. Warranties of Seller

Section 3.01. Seller hereby warrants, represents and covenants to Buyers and each of them, and this agreement is made in reliance on the following, each of which is deemed to be a separate covenant, representation and warranty:

. . . .

(h) As of the date of the Instructions, and at the date of the Closing the LLC has and will have no liabilities of any nature, whether accrued, absolute, contingent, or otherwise, and whether due or to become due, known or unknown, including without limitation tax liabilities due or to become due, and incurred in respect of or measured by the LLC's income for any period up to such date, or arising out of transactions entered into, or any state of facts existing prior thereto, except as set out on Exhibit "C" attached hereto.

(c) The LLC has and will have performed all obligations required to be performed by it to date, and is not nor will it be in default at the Closing under and contract, agreement, lease, commitment, indenture, mortgage, deed of trust, or other document to which it is a party.[1]

---

[1] The Court has used the numbering order provided in the agreement, which explains the lack of sequence.

Section 3.02. The warranties, representations, and covenants of each of the parties to this agreement, Buyers and Seller, shall survive the execution of this agreement and the consummation of the purchase and sales herein described.

According to the Gales, they would not have purchased the ownership interest, or would have offered substantially less for that interest, without the warranty.

The Gales used the condominium for several years before ultimately deciding to sell it. Prior to the sale, Carnrite submitted a "warning letter" to the Gales, explaining that the transaction between the Gales and the third party buyers would result in a substantial tax liability because the property itself was being sold. Carnrite suggested that the Gales should instead sell the membership interest in Villa Rayos to avoid the tax liability. The Gales also received advice from their real estate agent in Mexico explaining that whether the LLC or the property was sold, a substantial capital gains tax would be imposed.

In the face of conflicting advice, the Gales sold the condominium to the James S. Vaudagna and Josephine Vaudagna Trust in September of 2005 for $2,400,000. As a result of the sale, the Gales were required to pay a capital gains tax in the amount of $413,628. The amount of the tax was based on the original basis of the property, paid in 1991, which had not been adjusted upwards (aside from the step up in basis that occurs automatically to reflect inflation) after the Gale-Carnrite transaction. The Gales allege that Carnrite should have reported the sale of the LLC in 1999 because such a sale was a taxable event under Mexican law and would have resulted in a step up in the basis of the property. According to the Gales, they would have only been required to pay a capital gains tax of about $600, had Carnrite reported the sale. The Gales claim that because of the failure to report, Carnrite breached the sales agreement, in particular the warranty clause related to liabilities. The Gales originally filed suit in Nevada, but subsequently non-suited. The Gales filed suit in this Court on December 1, 2005, alleging a

breach of contract.


## III.  Contentions of the Parties

Carnrite contends that it is entitled to judgment as a matter of law on four grounds.  It argues first that the Gales could not have justifiably relied on the warranty found in the sales contract.  Second, it argues that it is not liable under the warranty because the capital gains taxes were not a contingent liability at the time of the sale.  Third, it argues that because the liability was one incurred by the limited liability company, the Gales do not have standing to bring the suit.  Finally, Carnrite argues that the Gales' claim is barred by limitations.

The Gales contend that Carnrite is not entitled to judgment as a matter of law and that genuine issues of material fact remain for trial.  The Gales respond to Carnrite's first ground for summary judgment by noting that the warranty was made part of the contract between the parties and reliance is therefore not required, and even if reliance is required, they would not have made the purchase without such a warranty.  As to Carnrite's second contention, the Gales allege that a liability existed at the time of the sale because the basis of the property had not been adjusted and also allege that the contract between the parties was not limited to contingent liabilities.  The Gales also dispute Carnrite's standing and limitations arguments.


## IV.  Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of "informing the Court of the basis of

its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)).

In deciding a motion for summary judgment, a court must look to the substantive law underlying the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251-52). Finally, the evidence is viewed in a light most favorable to the nonmovant and any inconsistencies will be resolved in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V.  Analysis and Discussion

Carnrite devotes considerable portions of its supporting memorandum and reply briefs to its argument that it is entitled to summary judgment because the Gales could not have justifiably relied on the warranty found in the sales contract.  Carnrite cites to several cases holding that reliance is an element for a breach of warranty claim and correctly identifies reliance as an element of such a claim.  But because the Gales have pled a breach of contract cause of action,

Carnrite's reliance argument is inapposite.

Carnrite first points to the Fifth Circuit Court of Appeals' opinion in *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708 (5th Cir. 2005).  In that case, a contractor entered into an agreement with the city of Dallas for levee construction, excavation of areas to create storm water detention lakes, and other miscellaneous projects.[2]  *Id.* at 711.  For fill material to be used in the construction of the levees, the contractor was to use excavated material, to the extent suitable, from "borrow sites" designated by the city.  Because the excavation material from the borrow sites was insufficient, the project became more expensive than the contractor had anticipated.  The contractor attempted to recover the additional costs from the city.  When the city denied the contractor's claims, the contractor brought suit, alleging breach of contract, breach of implied warranty, quantum meruit, and fraudulent inducement.  *Id.* at 712.  After trial, the jury found that the city had breached the contract by failing to perform a number of duties and also that the city had breached an implied warranty to provide accurate and suitable plans.

The Fifth Circuit reversed, holding that the contract between the parties had not been breached because the terms of the agreement put the risk on the contractor.  *Id.* at 723.  The court also held that the city did not breach any implied warranty because the contractor's reliance on any statements, if any, would have been unjustified because the agreement between the parties placed the risk upon the contractor.  *Id.* at 725.

Carnrite argues that, like the contractor in *Interstate Contracting*, the Gales were unjustified in relying upon Carnrite's affirmative statements.  However, as the Gales correctly argue, the contract at issue in this case, unlike the contract at issue in *Interstate Contracting*, did

---

[2] The contractor hired a subcontractor for levee construction and excavation.  Because the court held that the contractor had standing to bring suit on behalf of the subcontractor, this opinion makes no distinction between the contractor and the subcontractor for the sake of convenience.

not place the risk of loss on the party seeking damages.  More importantly for the purposes of the motion at bar, Carnrite confuses a breach of contract claim with a breach of warranty claim.  *See Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 574–76 (Tex. 1991); *Carlisle Corp. v. Medical City Dallas, Ltd.*, 196 S.W.3d 855, 869 (Tex. App.—Dallas 2006, writ requested).

In *Southwestern Bell*, FDP purchased an advertisement in the yellow pages from Southwestern Bell.  Because the advertisement contained erroneous information, FDP sued for breach of an express warranty under the Deceptive Trade Practices Act.  *See* Tex. Bus. & Com. Code Ann. §§ 17.41–17.63 (Vernon 2006).  After a jury found that it had breached an express warranty, Southwestern Bell appealed, arguing that FDP's allegations amounted to a breach of contract, not a breach of warranty.  Thus, the Texas Supreme Court was faced with the question of whether FDP's allegations stated a claim for breach of warranty or "merely a claim for breach of contract."  *Sw. Bell Tel. Co.*, 811 S.W.2d at 574.  The court began its analysis with a survey of the common law of warranty, and although not faced with a dispute related to the sale of goods, with an eye toward Article Two of the Uniform Commercial Code.  *Id.* at 575.   The court, acknowledging that the "UCC recognizes that breach of contract and breach of warranty are not the same cause of action," rejected Southwestern Bell's argument and found that FDP had stated a claim for a breach of warranty.  *Id.*

Admittedly, the use of the term "Seller's Warranties" in the parties' agreement confuses the issue.  A similar situation was presented in *TCI Cablevision* where the plaintiff, TCI, sued the defendant, South Texas, for breach of contract, breach of warranty, and fraud.  *TCI Cablevision of Tex., Inc. v. S. Tex. Cable Television, Inc.*, 791 S.W.2d 269 (Tex. App.—Corpus Christi 1990, writ denied).  TCI and South Texas entered into a contract wherein South Texas was to deliver a certificate "representing and warranting" to TCI the number of units to be included in the sale.

*Id.* at 271.   After the trial court granted South Texas' motion for summary judgment, TCI appealed.   The case is instructive because the appellate court analyzed TCI's breach of contract and breach of warranty claims as separate causes of action.   To determine whether South Texas was entitled to a summary judgment on the contract claim, the court examined the facts in light of the elements necessary to establish a breach of contract, namely that there was an agreement between the parties, performance by TCI, lack of performance by South Texas, and damages.   *Id.* at 271–72.   Importantly, the court did not consider reliance as it analyzed TCI's breach of contract claim.   The Court "conclude[d] that the Purchase Agreement, viewed in its entirety, [did] not prevent TCI's cause of action for breach of contract."   *Id.* at 272.   Because "South Texas . . . failed to negate at least one of the elements of TCI's cause of action for breach of contract," the court reversed the summary judgment.   *Id.* at 272.   The court next reviewed the breach of warranty claim, and also reversed summary judgment on that claim because a material fact issue remained as to whether South Texas' representation had been breached.   *Id.*

Carnrite cites to several other cases in its reply brief for the proposition that reliance is a necessary element for the Gales' claim.   However, each of the cases cited involve claims either for misrepresentation or for breach of warranty.   *City of Dallas v. Shortall* , 114 S.W.2d 536, 540 (Tex. 1938) (misrepresentation); *Land v. Roper Corp.* , 531 F.2d 445, 448 (10th Cir. 1976) (breach of warranty); *Coffey v. Dowley Mfg., Inc.* , 187 F. Supp. 2d 958 (M.D. Tenn. 2002) (same); *Gale v. IBM* , 781 N.Y.S.2d 45 (N.Y. App. Div. 2004) (same); *Kazerouni v. De Satnick* , 279 Cal. Rptr. 74 (Cal. Ct. App. 1991) (breach of warranty); *Jackson v. Russell* , 498 N.E.2d 22 (Ind. Ct. App. 1986) (same).   In addition, in two of the cases Carnrite relies on, the written contract between the parties disclaimed any warranties.   *Interstate Contracting Corp.* , 407 F.3d at 721 ("Information, data and representations contained in the contract documents pertaining to

the conditions at the site, *including subsurface conditions, are for information only and are not warranted or represented* in any manner to accurately show the conditions at the site of the work."); *Jackson v. Russell*, 498 N.E.2d at 36–37 ("In addition, the Agreement between Jackson and PPG bars him from relying on any warranties he now asserts regarding the absence of claims made by Russell.").  In two of the cases there does not appear to be any written contract between the parties.  *Coffey*, 187 F. Supp. 2d at 973 (products liability); *Gale*, 781 N.Y.S.2d at 47 (same).  Finally,  in *Kazerouni*, the warranty complained of was made in an extra-contractual financial statement that was corrected by accurate financial statements made prior to the close of escrow. *Kazerouni*, 279 Cal. Rptr. at 872–73.

In sum, Texas law has clearly established a distinction between breach of contract and breach of warranty, with each cause of action having its own elements.  Texas law has also established that a plaintiff may maintain a cause of action under either or both theories in a lawsuit and courts will analyze each theory using the applicable rule.  Further, it is inappropriate to require a plaintiff to show reliance as part of his claim for a breach of contract; otherwise, the distinction made by Texas law would be blurred.  *Cf. Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 399 (E.D. La. 1998) ("Requiring reliance for claiming breach of an express written warranty would dissolve Florida's distinction between the tort of misrepresentation and breach of contract."); *S. Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316, 1321 (M.D. Fla. 2001).  Breach of contract requires only that 1) the plaintiff show that a valid agreement was in place, 2) the plaintiff performed his obligations under the contract, 3) the defendant failed to perform his obligations under the contract, and 4) the plaintiff sustained damages as a result.  *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).  Therefore, Carnrite's first argument is not pertinent because reliance is not a

necessary element for a breach of contract claim.

Carnrite's second argument speaks to whether it breached the agreement at all.  It argues that it is not liable under the warranty because the capital gains taxes were not a contingent liability at the time of the sale.  The Gales counter by arguing that the agreement did not limit the liabilities to contingent liabilities.

In the agreement, Carnrite "warrant[ed], represent[ed] and covenant[ed]" to the Gales that "the LLC has and will have no liabilities of any nature, whether accrued, absolute, contingent, or otherwise, and whether due or to become due, known or unknown."  Furthermore, the agreement specified that the warranties, representations and covenants were to survive the execution of the agreement.  *Id.*

The Gales have presented deposition testimony of an expert witness stating that a taxable event occurred, but was unreported, when the Gales purchased Villa Rayos from Carnrite.  The Gales argue that because the transaction was unreported, they paid a higher capital gains tax than they would have had the transaction been properly reported.  Essentially, the Gales argue that they did not receive the step-up in the basis of the property that they should have upon purchase of the LLC.  According to the Gales' expert witness, under Mexican law, taxes are due upon sale of either the business entity with an interest in the property or of the underlying property itself.  Carnrite counters that the Gales incurred the taxes solely as a result of the way in which the transaction with the third-party was structured, that is, had the Gales sold only Villa Rayos, they would not have been liable for any capital gains.

The Court is unpersuaded by Carnrite's argument.  If Carnrite's position is correct, then parties selling Mexican property interests through limited liability companies could avoid Mexican taxes on sales of property altogether.  Such a result seems absurd.  The fact that Carnrite

structured its deal with the Gales in a manner that it perceived to avoid taxes does not automatically erase any capital gains liabilities, or other taxes, for which Villa Rayos may have been responsible.  Moreover, the Gales also contend that they were required to pay some amount of property taxes that had accrued during Carnrite's ownership of the LLC, such taxes would have certainly been a liability within the meaning of the agreement. Whether Mexican law required reporting of and the payment of taxes on the transaction between Carnrite and the Gales raises an issue that must be resolved.  Finally, as the Gales point out, the agreement between the parties was not limited to contingent liabilities, but included "liabilities of any nature, whether accrued, absolute, contingent, or otherwise, and whether due or to become due, known or unknown."  Therefore, issues remain for trial and summary judgment on the question of liability is unavailing.

Next, Carnrite argues that due to the structure of the sale, the limited liability company suffered the damages, not the Gales.  This argument seems to overlook the fact that the very basis of this lawsuit is the contract between the Gales and Carnrite.  As a party to the contract, the Gales have standing to bring the suit.

However, this contention does speak to the fourth element of a breach of contract claim, that is, whether the plaintiff suffered damages.  Essentially, Carnrite argues that the Gales do not have standing to bring this action because they have not suffered an injury in fact.  However, the uncontroverted summary judgment evidence shows that the Gales paid over $400,000 to the Mexican authorities, allegedly as a result of Carnrite's breach of the agreement.  Because the Gales themselves paid the funds, they have incurred damages.  Moreover, a fact issue remains as to the amount of damages suffered by the Gales.  Therefore, summary judgment is inappropriate.

Finally, Carnrite argues that the Gales' claim is barred by limitations.  The Court first

notes that the Gales stated a claim for a breach of contract, which has a limitations period of four years.  Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon 2006); *Stine v. Stewart* , 80 S.W.3d 586, 592 (Tex. 2002).  "It is well-settled law that a breach of contract claim accrues when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach." *Ratsavong v. Memevilay* , 176 S.W.3d 661, 670 (Tex. App.—El Paso 2005, pet. denied).  "Normally a cause of action accrues when a wrongful act causes some legal injury. But accrual may be deferred if 'the nature of the injury incurred is inherently undiscoverable and the evidence of the injury is objectively verifiable.'" *Via Net v. TIG Ins., Co.* , No. 05-0785, 2006 Tex. LEXIS 1294, at *5–6 (Tex. Dec. 22, 2006) (released for publication Feb. 9, 2007).  "Some contract breaches may be inherently undiscoverable and objectively verifiable. But those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims." *Id.* at *11.

Carnrite argues that because the breach occurred in 1999, it is entitled to summary judgment.  The Gales argue that the injury did not occur until they were required to pay over $400,000 in capital gains taxes in 2005 and therefore their breach of contract claim did not accrue until that time because they had suffered no damages.  They also argue that they did not, nor could they have had, notice of the fact that the agreement had been breached.

The parties contracted for the sale of a limited liability company, apparently formed solely to be the beneficial owner of property in Mexico.  The Gales did perform some investigation into the transaction, but according to the Gales, that investigation involved only the condition of the property, title, and ownership.  For Carnrite this creates, at best, a fact issue as to what was discovered, or could have been discovered, at the time of the transaction.  Moreover, due to the complexity of the transaction, the Court finds that the discovery rule applies and the

cause of action did not accrue until the Gales were aware of the injury, that is, when they were forced to pay the Mexican authorities.

It is undisputed that the Gales did not pay the capital gains taxes due until they sold the condominium in September of 2005.  However, Carnrite points out, and the Gales acknowledge, that in August of 2002, they had been informed that the property itself must be sold because of market conditions and that they would be faced with a capital tax issue.  Because the Gales filed suit in December of 2005, they are within the statutory period for either triggering date. Therefore, summary judgment on limitations grounds is inappropriate.

## VI.  Conclusion

Carnrite has not shown that it is entitled to judgment as a matter of law because it has not negated any of the elements of the Gales' breach of contract claim.  The undisputed evidence shows that a valid agreement between the parties existed and that the Gales had met their obligations under that agreement.  There also remain genuine issues of material fact in dispute as to whether Carnrite breached its obligation and as to the extent of the Gales' damages. Carnrite's motion for summary judgment is Denied.

**IT IS SO ORDERED.**

SIGNED and ENTERED this 27th day of February, 2007.

Kenneth M. Hoyt
United States District Judge